United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 14, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| GALLERIA PAIN PHYSICIANS, PLLC, | ) |
| | ) Case No. 24-30130 (JPN) |
| Debtor. | ) |
| | ) |

## ORDER CONFIRMING AMENDED PLAN OF REORGANIZATION

THIS MATTER COMING TO BE HEARD on the hearing on confirmation of the *Debtor's Amended Plan of Reorganization for Small Business Under Subchapter V of Chapter 11* ("*Plan*") filed by Galleria Pain Physicians, PLLC, Debtor/Debtor-in-Possession ("*Debtor*"); proper notice having been provided as required by Rule 2002(b) of the Federal Rules of Bankruptcy Procedure; the Debtor having filed a Ballot Summary pursuant to this Court's order; this Court having heard and considered the statements of Counsel on behalf of the Debtor relating to the confirmation of the Plan; this Court finding that the requirements of Section 1129(b) and 1191 of the Bankruptcy Code with respect to confirmation of the Plan have been satisfied, and that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims; there being no pending objections to the Plan; and this Court being fully advised in the premises;

**NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

A.   The Plan is supplemented and amended as follows:

i.   *LEAF Capital Funding, LLC has produced documentation identifying it as the successor-in-interest to Financial Servicing, LLC d/b/a Graybar. Accordingly, the following definition is added to Section 1.04 of the Plan:*

"LEAF" means LEAF Capital Funding, LLC as successor-in-interest to Financial Servicing, LLC d/b/a Graybar

ii.     *Section 1.04 of the Plan is amended as follows:*

"Graybar Collateral" is replaced with "LEAF Collateral" and shall mean VoIP phone equipment with accessors owned by the Debtor.

"Graybar Secured Claim" is replaced with "LEAF Secured Claim" and shall mean the first-priority purchase money security interest in the LEAF Collateral

iii.    *The term "Graybar" is replaced with "LEAF" throughout the Plan.*

iv.     *Section 4.05 is amended and replaced with:*

The Debtor will request confirmation of the Plan under section 1191(b) of the Bankruptcy Code with respect to each Class that has not accepted the Plan.

To prevent a situation where the cost of plan disbursements over the next five (5) years by the Subchapter V Trustee would effectively eliminate any distribution to unsecured creditors, the United States Trustee and the two non-voting classes (Besse Medical and the SBA) do not object to the Debtor serving as the post-confirmation disbursing agent and making Plan payments. Accordingly, notwithstanding Bankruptcy Code § 1194(b), the Debtor shall make payments to Creditors under the Plan.

In the event the Court orders the Subchapter V Trustee to make payments to Creditors under the Plan, the Subchapter V Trustee shall be compensated for his post-confirmation duties at his normal hourly rate and shall be paid from the Projected Disposable Income. The amount of Projected Disposable Income distributed or reserved to Creditors will be net of the Projected Disposable Income remitted by the Debtor to the Subchapter V Trustee to cover post-confirmation fees and expenses (including any required post-confirmation retainer). The Subchapter V Trustee's fees and expenses shall be disclosed in the quarterly report filed with the Court. All parties in interest will have twenty-one (21) days after the quarterly report is filed to object to the Subchapter V Trustee's fees and expenses disclosed therein. If no objection is received, the Subchapter V Trustee may disburse his fees and expenses from the Projected Disposable Income without further order of the Court. In the event there is no Projected Disposable Income for a quarterly period, the Debtor is authorized to advance payment for the Subchapter V Trustee's fees and expenses. The Debtor is authorized to deduct from the Projected Disposable Income any amounts advanced by the Debtor to pay the Subchapter V Trustee's fees and expenses. In addition, in its sole discretion, the Debtor is authorized to withhold a portion of the Projected Disposable Income it deems necessary to cover the Subchapter V Trustee's future fees and expenses until the case is closed. The Subchapter V Trustee shall file post-confirmation quarterly fee applications within fourteen (14) days of each quarterly report filed with the Court which shall include all compensation received and disclosed in the quarterly reports. The Subchapter V Trustee shall file a post-confirmation final fee application within fourteen (14) days of the filing of the motion for final decree under Fed. R. Bankr. P. 3022, which shall

include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order. Following entry of the Confirmation Order requiring the Subchapter V Trustee to make payments to Creditors under the Plan, any disbursements made by the Subchapter V Trustee on account of a Claim are deemed authorized disbursements, and the Subchapter V Trustee shall have no liability for these disbursements. The Subchapter V Trustee shall have no liability to any person in the event that the Debtor fails to timely deliver funds to the Subchapter V Trustee, or otherwise fails to perform its obligations under the Plan. The Subchapter V Trustee shall have no obligation to make Disbursements on account of Allowed Claims unless and until he determines that there are adequate funds to cover a distribution to Holders from the Projected Disposable Income, net of the Subchapter V Trustee's fees and costs (including any required post-confirmation retainer).

    *v.*    *Section 5.03 of the Plan is amended to state the following:*

Class 1 consists of the PlainsCapital Secured Claim.  The Debtor estimates that the Claim in this class totals $329,101.00, which is secured by a first-priority security interest in the PlainsCapital Collateral.

The Debtor will execute a promissory note (substantially in the form attached hereto as **Exhibit 3**) in the principal amount of $329,101 or the amount allowed by the Bankruptcy Court or agreed to by the Debtor and PlainsCapital. The promissory note is a modification of the Debtor's pre-petition loan obligation to PlainsCapital. The promissory note shall accrue interest at a rate of 9.5 percent (9.5%) per annum. The payments shall commence on July 1, 2024.  The promissory note will be payable over 60 months. The Debtor shall make monthly installment payments of no less than $6,752.01 to the Holder of the Class 1 PlainsCapital Secured Claim. There will be no early payment penalty. For the avoidance of doubt, nothing contained herein shall be deemed to release or discharge any pre-petition personal guaranty held by PlainsCapital from a non-debtor party.

Subject to the existing purchase money security interests of LEAF, Stryker, OnePlace, and Hologic on certain equipment as detailed more fully in this Plan, the Debtor grants PlainsCapital a first-priority security interest in its equipment and accounts as more fully reflected in a Commercial Security Agreement agreed to by PlainsCapital and the Debtor. PlainsCapital shall retain its first-priority security interest in the PlainsCapital Collateral until full payment of the PlainsCapital Secured Claim as set forth in this Plan.

    *vi.*    *Section 5.09 of the Plan is amended to state the following:*

Class 7 consists of the LEAF Secured Claim.  The Debtor estimates that the Claim in this class totals $35,356.75, which is secured by a first-priority purchase money security interest in the LEAF Collateral.

The Debtor will make thirty-four (34) monthly payments to LEAF in the amount of $1,033, beginning on July 1, 2024, with one (1) final payment in the amount of $235 on February 1, 2027.

LEAF shall retain its first-priority security interest in the LEAF Collateral until full payment of the LEAF Secured Claim as set forth in this Plan. Upon full payment of the LEAF Secured Claim, the LEAF first-priority security interest in the LEAF Collateral shall be deemed released.

vii.   *Section 5.10 of the Plan is amended as follows:*

Class 8 Allowed Priority Claims against the Debtor shall be paid in full from the Contributed Cash Proceeds from Operations, beginning on the later of: (i) the dates of the distributions of the Contributed Proceeds from Operations described in Section 5.11 below until such Allowed Priority Claims are paid in full; (ii) thirty (30) days after such Claims become Allowed Priority Claims; and (iii) such other time as may be agreed to in writing between the Debtor and the holders of the Allowed Priority Claims. The Debtor estimates that the Class 8 Allowed Priority Claims will total $8,995.13.

**Taxing Authorities.**   Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all ad valorem tax liens securing the prepetition and postpetition ad valorem taxes of any Taxing Authority, including but not limited to Harris County ESD #48, Houston Community College, Houston ISD, Katy ISD, the City of Webster, and the City of Bellaire (collectively, "*Taxing Authorities*") are retained until paid in full. The claims of the Taxing Authorities for all tax years 2023 and prior shall accrue statutory interest at the rate of 12% per annum from the Petition Date until paid in full. The claims of the Taxing Authorities for the 2023 and all prior tax years shall be paid on the later of 30 days from the Effective Date or July 1, 2024. The failure to make such payment shall be considered an event of default under this Plan. The taxes for the 2024 and subsequent tax years shall be paid by the Debtor in the ordinary course of business as billed, prior to delinquency under Texas law, and without the need to file an administrative expense claim or a request for payment. In the event the 2024 taxes are not paid prior to delinquency as required under Texas law, interest shall accrue as provided under Texas law and shall be considered an event of default under this Plan.

viii.   *Section 7.10 of the Plan is amended as follows:*

In the event of a material default of the Debtor under the terms of the Plan that is not cured within 30 days of written notice of a default, the Debtor shall market and sell the assets of the Debtor.  After the Secured Claims have been satisfied, the proceeds of sale will be paid to Creditors, first to debt incurred post-confirmation, then to pay Allowed Administrative Claims, then to pay Allowed Priority Claims, and then to pay Allowed General Unsecured claims.

ix.   *Section 10.02 is amended as follows:*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE CONFIRMATION DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST THE DEBTOR ARE, WITH RESPECT TO OR ON ACCOUNT OF ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR

INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT) THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER AGAINST THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND AGAINST OR IN THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THE INJUNCTION PROVIDED FOR IN SECTION 10.02 OF THE PLAN SHALL IMPACT ANY SECURED PARTY RIGHTS AND REMEDIES UNDER THE PROMISSORY NOTES ISSUED PURSUANT TO THE PLAN.

B.      The Plan, a copy of which is attached to this Order, as amended herein, is hereby

confirmed.

lSigned: June 14, 2024

_____

Jeffrey P. Norman

United States Bankruptcy Judge

**ATTORNEYS FOR DEBTOR**
Matthew E. McClintock, Esq.
Ainsley G. Moloney, Esq.
Amrit S. Kapai, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310
mattm@goldmclaw.com
ainsleym@goldmclaw.com
amritk@goldmclaw.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GALLERIA PAIN PHYSICIANS, PLLC, | ) Case No. 24-30130 (JPN) |
| | ) |
| Debtor. | ) |
| | ) |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION FOR
## SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11

Galleria Pain Physicians, PLLC, the Debtor in the above-captioned bankruptcy case, files this Amended Plan of Reorganization[1] under Subchapter V of Chapter 11 of title 11 of the Bankruptcy Code (the "*Plan*"). The Plan classifies Claims and Interests into various classes according to their right to priority of payments as provided under the Bankruptcy Code. The Plan states whether each class of Claims or Interests is impaired or unimpaired and provides the treatment each class will receive under the Plan.

The Debtor will ask the Bankruptcy Court to confirm this Plan. If the Bankruptcy Court confirms the Plan, then the Plan will be binding on the Debtor, all Creditors and Interest Holders, and any other parties-in-interest in the Bankruptcy Case.

**Please read this document carefully and consult with your legal advisor.**

---

[1]     On March 21, 2024, the Debtor filed its initial *Plan of Reorganization for Small Business Under Subchapter V of Chapter 11* [Docket No. 72].

1

# TABLE OF CONTENTS

ARTICLE I - INTRODUCTION, DISCLOSURES, DEFINITIONS, INTERPRETATION, AND
EXHIBITS............................................................................................................................. 4

    **Section 1.01**    **Introduction** ................................................................................... 4

    **Section 1.02**    **Disclosures** ..................................................................................... 4

    **Section 1.03**    **Background of Subchapter V Case** ............................................. 5

    **Section 1.04**    **Definitions** ...................................................................................... 9

    **Section 1.05**    **Rules of Interpretation and Computation of Time** ................... 14

    **Section 1.06**    **Exhibits** .......................................................................................... 14

ARTICLE II UNCLASSIFIED CLAIM........................................................................... 14

    **Section 2.01**    **Unclassified Claims** ...................................................................... 14

ARTICLE III – CLASSIFICATION OF CLAIMS AND INTERESTS. ......................... 15

    **Section 3.01**    **Classified Claims** .......................................................................... 15

      a)    Class 1 consists of the PlainsCapital Secured Claim against the Debtor..................... 15

      b)    Class 2 consists of the Besse Medical Secured Claim against the Debtor................... 15

      c)    Class 3 consists of the SBA Secured Claim against the Debtor. ................................. 15

      d)    Class 4 consists of the OnePlace Capital Secured Claim against the Debtor. .............. 15

      e)    Class 5 consists of the Stryker Secured Claim against the Debtor. ............................. 15

      f)    Class 6 consists of the Hologic Capital Secured Claim against the Debtor................. 15

      g)    Class 7 consists of the Graybar Secured Claim against the Debtor............................. 15

      h)    Class 8 consists of the Allowed Priority Claims against the Debtor. .......................... 15

      i)    Class 9 consists of the Allowed General Unsecured Claims against the Debtor.......... 15

      j)    Class 10 consists of the Equity Securities..................................................................... 15

ARTICLE IV – VOTING AND IMPAIRMENT OF CLASSES. .................................... 15

    **Section 4.01**    **Impaired Classes of Claims Entitled to Vote**............................. 15

    **Section 4.02**    **Classes Deemed to Accept the Plan** ........................................... 16

    **Section 4.03**    **Voting and Confirmation Procedures**......................................... 16

    **Section 4.04**    **Confirmation Hearing** ................................................................. 16

    **Section 4.05**    **Cram Down** ................................................................................... 16

    **Section 4.06**    **Fair and Equitable Test**............................................................... 17

    **Section 4.07**    **Best Interest Test**.......................................................................... 18

ARTICLE V – TREATMENT OF CLASSES OF CLAIMS AND INTERESTS. ......... 19

    **Section 5.01**    **Allowed Professional Fee Claims**................................................ 19

**Section 5.02**   **Allowed Other Administrative Expense Claims** ....................................... 19

**Section 5.03**   **Class 1 Claim: PlainsCapital Secured Claim** ......................................... 19

**Section 5.04**   **Class 2 Claims: Besse Medical Secured Claim** ..................................... 20

**Section 5.05**   **Class 3 Claims:  SBA Secured Claim** ................................................... 20

**Section 5.06**   **Class 4 Claims:  OnePlace Capital Secured Claim** ............................... 21

**Section 5.07**   **Class 5 Claims:  Stryker Secured Claim** .............................................. 21

**Section 5.08**   **Class 6 Claims:  Hologic Secured Claim** .............................................. 21

**Section 5.09**   **Class 7 Claims:  Graybar Secured Claim** ............................................. 21

**Section 5.10**   **Class 8 Claims:  Allowed Priority Claims** ............................................ 22

**Section 5.11**   **Class 9 Claims: Allowed General Unsecured Claims** ........................... 22

**Section 5.12**   **Class 10 Interests: Equity Security Interest** ......................................... 22

ARTICLE VI – TREATMENT OF EXECUTORY CONTRACTS. ........................................... 23

**Section 6.01**   **Executory Contracts Assumed or Deemed Rejected** ............................. 23

**Section 6.02**   **Bar Date for Rejection Damages** ............................................................ 23

ARTICLE VII – MEANS OF IMPLEMENTATION OF THE PLAN. ...................................... 24

**Section 7.01**   **Retention of Equity** ................................................................................. 24

**Section 7.02**   **Vesting of Assets** ..................................................................................... 24

**Section 7.03**   **Retention of Causes of Action** ................................................................ 24

**Section 7.04**   **Funding** .................................................................................................... 24

**Section 7.05**   **Management** ............................................................................................. 24

**Section 7.06**   **Objections to Claims** ............................................................................... 24

**Section 7.07**   **No Distribution on Disputed Claims** ...................................................... 24

**Section 7.08**   **Section 1146 Exemption** .......................................................................... 25

**Section 7.09**   **Documentation Necessary to Release Liens** ........................................... 25

**Section 7.10**   **Appropriate Remedies** ............................................................................ 25

**Section 7.11**   **Avoidance Actions** ................................................................................... 25

ARTICLE VIII – BAR DATES FOR ADMINISTRATIVE CLAIMS. ..................................... 26

**Section 8.01**   **Bar Date for Administrative Claims** ...................................................... 26

ARTICLE IX – CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE .................... 26

**Section 9.01**   **Conditions to Confirmation** .................................................................... 26

**Section 9.02**   **Conditions to Effective Date** ................................................................... 26

ARTICLE X – EFFECTS OF CONFIRMATION. ................................................................... 26

**Section 10.01**   **Debtor's Discharge** ................................................................................ 26

**Section 10.02**   **Injunction** ............................................................................................... 27

2

Section 10.03    **Term of Bankruptcy Injunction or Stays** ................................................. 28

Section 10.04    **Exculpation** ................................................. 28

Section 10.05    **Other Documents and Actions** ................................................. 28

ARTICLE XI – MISCELLANEOUS PROVISIONS ................................................. 28

Section 11.01    **Headings for Convenience Only** ................................................. 28

Section 11.02    **Binding Effect of Plan** ................................................. 28

Section 11.03    **Modification of the Plan** ................................................. 28

Section 11.04    **Final Order** ................................................. 29

Section 11.05    **Severability** ................................................. 29

Section 11.06    **Governing Law** ................................................. 29

Section 11.07    **Notices** ................................................. 29

Section 11.08    **Filing of Additional Documents** ................................................. 30

Section 11.09    **Lapsed Distributions** ................................................. 30

Section 11.10    **Undeliverable and Unclaimed Distributions** ................................................. 30

Section 11.11    **Defenses with Respect to Claims** ................................................. 31

Section 11.12    **No Injunctive Relief** ................................................. 31

Section 11.13    **No Admissions** ................................................. 31

Section 11.14    **Written Agreement** ................................................. 31

Section 11.15    **Minimal Distribution** ................................................. 31

ARTICLE XII – RETENTION OF JURISDICTION. ................................................. 31

Section 12.01    **Exclusive Jurisdiction of Bankruptcy Court** ................................................. 32

PLAN EXHIBITS ................................................. 34

# ARTICLE I.

## INTRODUCTION, DISCLOSURES, DEFINITIONS, INTERPRETATION, AND EXHIBITS

**Section 1.01   Introduction**

The Debtor proposes this Subchapter V Plan of Reorganization dated March 21, 2024, under sections 1129 and 1191 of chapter 11 of the Bankruptcy Code.  The Debtor projects that it will have $114,923 in disposable income from operations earned over a three-year period (the "*Projected Disposable Income*") following confirmation of this Plan.  Pursuant to the Plan, the Debtor will make two installment payments to Creditors, as described more fully herein in the amount of the Projected Disposable Income.

Subject to additional claims that may be filed before the Claims Bar Date (defined below) and a formal claims analysis, the Debtor estimates that this will result in an approximate 8% payment of general unsecured claims from Projected Disposable Income.

The Debtor believes that confirmation of the Plan is in the best interest of all parties, including the Debtor's Creditors and Estate.  Accordingly, the Debtor urges each Creditor that is Impaired hereunder, and entitled to vote, to vote to accept the Plan.

**Section 1.02   Disclosures**

The Debtor submits this Subchapter V Plan of Reorganization and asserts that it contains adequate information pursuant to sections 1125(f) and 1187(c) of the Bankruptcy Code.

To be counted, a ballot containing your vote to accept or to reject the Plan must be received by the Debtor's counsel (Goldstein & McClintock LLLP, 111 West Washington Street, Suite 1221, Chicago, Illinois 60602, Attn: Amrit S. Kapai, Email: amritk@goldmclaw.com) by no later than 5:00 p.m. Central Standard Time on May 3, 2024.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS PLAN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT.   HOWEVER, THE DATA IN THE DEBTOR'S POSSESSION IS BASED ON THE RECORDS OF THE DEBTOR. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN TAKEN TO MAKE SURE IT FAIRLY REPRESENTS THE CURRENT POSITION OF THE DEBTOR.  CREDITORS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL OR EACH OTHER AND TO REVIEW ALL OF THE RECORDS HEREIN IN ORDER TO FULLY UNDERSTAND**

**THE DISCLOSURES MADE IN THIS PLAN. ANY PLAN WILL BE COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT ITS COUNSEL WITH RESPECT TO THE PLAN, ITS TAX IMPLICATION(S) AND ITS EFFECT ON HIS, HER OR ITS RIGHTS.**

**Section 1.03    Background of Subchapter V Case**

*The Debtor's Business*

The Debtor is a medical practice that specializes in pain management and treatment and currently operates out of two (2) clinics located in the Houston metropolitan area: Bellaire (the "*Bellaire Clinic*") and Webster (the "*Webster Clinic*"). The Bellaire Clinic is located at 6700 West Loop South, Suite 225 in Bellaire, Texas (the "*Bellaire Property*") and the Debtor leases the Bellaire Property from Norvin Pin Oak NORTH LLC (the "*Bellaire Landlord*"). The Webster Clinic is located at 251 Medical Center Boulevard, Suite 230 in Webster, Texas (the "*Webster Property*") and the Debtor leases the Webster Property from VREC II – LO Webster MOB SPE, LP (the "*Webster Landlord*"). Since the Petition Date, the Debtor closed its clinic located in Katy (the "*Katy Clinic*"). The Katy Clinic was formerly located at 707 South Fry Road, Suite 290 in Katy, Texas (the "*Katy Property*") and the Debtor leased the Katy Property from HTA – St. Catherine MOB 2, LLC (the "*Katy Landlord*" and together with the Bellaire Landlord and the Webster Landlord, the "*Landlords*"). As further detailed herein, the Court has authorized the Debtor to reject the lease of the Katy Property effective as of the Petition Date.

The Debtor's practice is comprised of healthcare providers who have special training and skill in the evaluation, diagnosis, and treatment of all types of pain caused by surgery, injury, nerve damage, and metabolic problems such as diabetes. Pain management doctors and medical staff at the Debtor's various locations perform medication management, physical therapy, and nerve blocks.

In 2022, the Debtor generated gross revenue of approximately $6,597,032.25, and 2023 projects annual revenue to be approximately $6,650,165.14. The Debtor generates revenue primarily from patient co-pays and reimbursements from insurance providers (private, Medicaid, and/or Medicare).

The Debtor currently employs a total of fifteen (15) employees. Employees consist of physicians, nurse practitioners, patient coordinators, medical assistants, and clinic coordinators. The Company also offers medical insurance (health, dental, and/or vision) and 401k match benefits to certain employees.

*The Debtor's Assets*

The Debtor's primary assets generally consist of the following:

| Asset | Estimated Liquidation Value | Notes |
|---|---|---|
| Cash On Hand (as of 3/16) | $24,046 | DIP checking accout ending in 5701 at PlainsCapital. |
| Accounts Receivable (as of 3/16) | $496,921 | The Debtor estimates the net A/R value based on an estimated 19% collectibility rate (higher than historical of approximately 18%) on total A/R (total A/R was $3,269,214 as of 3/16) less a 20% collection cost (e.g., to pay an outsourced agency to collect the remaining A/R in a liquidation). This might over-estimate the value, as in a liquidation under either Chapter 11 or Chapter 7 the collection rate could drop below the historical 18% rate. |
| Equipment | $36,000 | Estimated net liquidation value of the Debtor's unencumbered equipment with a 20% reduction for liquidation costs. Much of the equipment is subject to PMSIs, and it is not expected to have material liquidation value. |
| Inventory | $24,238 | In a liquidation scenario, the Debtor would have 2 options to liquidate its inventory (mostly consisting of viscosupplementation knee injections): (i) return the inventory to the distributor and offset amounts owed to same or (ii) sell the inventory to another clinic at a heavily discounted rate of around 80% as medical practices are not inclined to purchase inventory from a non-medical distributor. Accordingly, the liquidation value of the inventory is calculated as 20% of average value of inventory on hand. |
| **Total** | **$581,205** | |

### *Challenges Leading to the Bankruptcy Filing*

The Debtor was initially formed and operated by three (3) physicians – Dr. Kevin Barton, Dr. Prafulla Singh, and Dr. Zehra Hooda (collectively, the "*Prior Owners*"). The Debtor's medical practice focuses on pain management and treatment, including pain resulting from osteoarthritis of the knee. Many of its patients are elderly and rely on Medicare as their primary health insurance provider.

As a smaller group of clinics with only three locations, the Debtor did not benefit from purchasing discounts and economies of scale that larger medical groups often benefit from. Moreover, its Katy Clinic has been consistently unprofitable. The Debtor was already facing challenges when in 2022 the United States government implemented significant cuts to Medicare physician payments effective July 1, 2022 (the "*2022 Medicare Payment Cuts*"), with some physicians facing as much as 8.5% and higher in Medicare pay cuts. In fact, one of the billing codes utilized by the Debtor when submitting reimbursement requests to insurance companies was cut by more than 50%. Since commercial payment rates are generally a function of Medicare rates, the reduction in the value of Medicare payments also spilled over to the commercial rates paid to physician practices. Thus, the cuts substantially harmed physician practices around the country. The 2022 Medicare Payment Cuts had a materially negative impact on the Debtor and its revenue stream.

On or about November 16, 2023, John Rush, MD, PLLC – the Debtor's current owner – acquired the Debtor from the Prior Owners. Dr. Rush is a well-established physician and entrepreneur operating a nationwide network of medical practices focused on advanced therapies for pain treatment and management. Dr. Rush acquired the Debtor with hopes of instituting cost-effective strategies he used in his other clinics to help alleviate the consequences of the 2022 Medicare Payment Cuts and to otherwise increase the Debtor's profitability and allow it to repay its Creditors.

Soon after assuming control of the Debtor, however, Dr. Rush realized the Debtor's debt level is unsustainable in light of the challenges facing the clinics. The Debtor owes its lenders materially more than the liquidation value of the collateral and simply could not sustain its debt load, pay market rent for its three locations, and operate profitably. In fact, the Debtor was only able to operate since the acquisition because: (a) Dr. Rush's management company – AKPC – has been providing management services to the Debtor without being paid currently and (b) another entity controlled by Dr. Rush purchased and provided medication and other supplies to the Debtor to allow the Debtor to continue serving its patients. Those advances kept the Debtor operational and helped it improve its cash flow, but the Debtor could not pay those amounts back (or amounts owed to other unsecured Creditors) and could not get to profitability without restructuring.

Finally, after the acquisition, Dr. Rush was informed that the Debtor's Webster Clinic had lost its DME license while under the control of the Prior Owners. DME providers are governed by stringent federal and state laws, particularly those that participate in the Medicare program. Initially, if a license is determined to be required, a DME company must obtain an "in-state" or a "resident" license. This generally requires an extensive application, varying fees, proof of insurance, and an inspection, which is usually scheduled upon approval of the application.

Until and unless the Debtor's DME license is reinstated, it is unable to offer its patients Medicare bracing at the Webster Clinic. This was another obstacle that substantially hindered the Debtor's profitability.

### Significant Events in the Bankruptcy Case

On January 11, 2024, the Debtor filed the Bankruptcy Case. The Debtor has been operating its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Thomas A Howley was appointed as Subchapter V Trustee.

On January 12, 2024, the Debtor filed emergency motions (i) *(a) Authorizing the Debtor to Pay and Honor Priority Pre-Petition Wages, Benefits, And Obligations (and to Continue Same, and Make Ordinary Course Deductions from Employee Paychecks, Post-Petition); and (b) Approving Related* [the "*Wage Motion*," Docket No. 3]; And (ii) *(1) Authorizing Use of Cash Collateral; (2) Scheduling Final Hearing; (3) Authorizing Debtor in Possession Financing; and (4) for Related Relief* [the "*Cash Collateral Motion*," Docket No. 4] (together, the "*First Day Motions*"). The Court granted all of the First Day Motions by orders entered on January 16 and 29, 2024. A continued hearing on the Cash Collateral Motion is set for March 26, 2024.

On January 25, 2024, the Debtor filed its (i) *Motion for Entry of an Order Nunc Pro Tunc to the Petition Date Authorizing (i) Continued Maintenance of Existing Cash Management System and Bank Account, (ii) Use of Existing Business Forms, and (iii) Related Relief* [Docket No. 23], and (ii) *Ex Parte Motion for Entry of an Order Granting Additional Time within which to File Schedules and Statements* [Docket No. 25]. The Court granted both of these additional Motion by orders entered on February 21, 2024 and January 26, 2024, respectively.

On January 25, 2024, the Debtor also filed its *Motion for Entry of an Order Nunc Pro Tunc to the Petition Date: (A) Rejecting the Debtor's Lease of the Property at 707 South Fry Road, Suite 290, Katy, Texas 77450; and (B) Approving Related Relief* [Docket No. 24] (the "*Katy Rejection Motion*"). As more fully discussed in the Katy Rejection Motion, the Katy Clinic has been consistently unprofitable. As part of its reorganization efforts, the Debtor determined that closing the Katy Clinic would increase its overall profitability and maximize recoveries for all Creditors. Therefore, in an effort to reduce post-petition administrative costs and in the exercise of the Debtor's business judgment, the Debtor sought to reject the unexpired lease of the real property where the Katy Clinic was located, *nunc pro tunc* to the Petition Date. The Court granted the Katy Rejection Motion on February 21, 2024.

On February 8, 20204, the Debtor filed an *Emergency Motion for Determination that Appointment of a Patient Care Ombudsman Is Not Necessary* [Docket No. 41] (the "Ombudsman Motion"). In the Ombudsman Motion, the Debtor requested that the Court determine that the appointment of a patient care ombudsman under section 333 of the Bankruptcy Code was not needed given the particular facts and circumstances of this case. In particular, the Debtor asserted that a patient care ombudsman is not warranted in this chapter 11 case because: (1) the Debtor's bankruptcy is driven by financial difficulties; (2) the Debtor's operating clinics are licensed and supervised by regulatory entities; (3) the Debtor's operating clinics provide excellent patient care; (4) internal safeguards exist to allow patients to protect their rights; (5) patients possess a low level

of dependency upon the Debtor's clinics; (6) a low likelihood of tension exists between patients and the Debtor; (7) the Debtor has no plans to reduce the quality of patient care; (8) internal safeguards exist to ensure an appropriate level of care; and (9) the appointment of a patient care ombudsman would be an unnecessary expense. On February 12, 2024, the Court granted the Ombudsman Motion.

On February 8, 2024, the Debtor also filed its Schedules of Assets and Liabilities.

## Section 1.04   Definitions

"**Administrative Claim**" means a Claim of a Creditor of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, and includes: (i) actual and necessary costs and expenses incurred by a Debtor after such Debtor's Petition Date with respect to preserving such Debtor's Estate and operating the Debtor's business; (ii) any Professional Fee Claims approved by the Bankruptcy Court under section 330 of the Bankruptcy Code that are incurred on or before the Confirmation Date; and (iii) all fees and charges properly assessed against the Debtor's Estate under 28 U.S.C. § 1930. For the avoidance of doubt, these Claims shall include Other Administrative Expense Claims and Professional Fee Claims.

"**AKPC**" means Arthritis Knee Pain Centers, LLC.

"**Allowed Claim**" or "**Allowed . . . Claim**" means a Claim, proof of which is filed by the Claims Bar Date fixed by the Bankruptcy Court, or that has been, or is hereafter, scheduled by the Debtor as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been raised by the Debtor within the applicable period fixed pursuant to the Plan, or as to which a Final Order allowing such Claim has been entered.

"**Avoidance Action**" means any claim or right under the following: sections 542, 544, 545, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code; all prevailing fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in debtors' or creditors' rights to avoid, rescind, or recover on account of transfers, including, but not limited to, claims relating to illegal dividends; all preference laws; the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE § 24.008, *et seq*.; and any other applicable federal, state, or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such actions as of the Effective Date.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, located in Houston Texas, and any other court having jurisdiction over this Case or a proceeding arising in, or arising under or related to this Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

"**Besse Medical**" means ASD Specialty Healthcare, LLC d/b/a Besse Medical.

9

"**Besse Medical Collateral**" means the Debtor's accounts, equipment, proceeds, and inventory as of the date of this Plan.

"**Besse Medical Secured Claim**" means the second-priority Secured Claim of Besse Medical in the Besse Medical Collateral securing amounts owed by the Debtor to Besse Medical.

"**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

"**Case**" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date under Case No. 24-30130 (JPN), currently pending before the Bankruptcy Court.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means all claims and causes of action, including Avoidance Actions, of the Debtor as of the Effective Date, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending in any jurisdiction in which the Debtor is plaintiff, defendant or other party, and all other adversary proceedings and lawsuits, together with all products and proceeds thereof.

"**Claim**" means any right to payment, other than an Administrative Claim, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

"**Claims Bar Date**" means the deadline set by the Bankruptcy Court to file a proof of claim in this Bankruptcy Case, which is March 21, 2024.

"**Class**" means a class of Holders of Claims as described in the Plan.

"**Confirmation Date**" means the date of entry of the Confirmation Order.

"**Confirmation Hearing**" means the hearing of the Bankruptcy Court on the confirmation of the Plan.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan.

"**Creditors**" means all Persons holding Claims against the Debtor.

"**Debtor**" means Galleria Pain Physicians, PLLC, as debtor and debtor-in-possession in the Case.

"**Disputed Claim**" means any Claim that is not an Allowed Claim or a claim the Debtor agrees should be allowed.

"**DME**" means Durable Medical Equipment.

10

"**Dr. Rush**" means John J. Rush.

"**Effective Date**" means the later of (i) the date on which all of the conditions to the effectiveness of the Plan as specified in Section 9.02 of the Plan have been satisfied or waived in accordance therewith, or (ii) two (2) business days after the Confirmation Order is no longer appealable under the Bankruptcy Rules.

"**Equity Security**" has the meaning as defined in section 101(16) of the Bankruptcy Code.

"**Equity Security Holder**" means John Rush, MD, PLLC.

"**Estate**" means the estate of the Debtor created in this Case under section 541 of the Bankruptcy Code.

"**Executory Contract**" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"**Final Order**" means an order or judgment as to which the time to appeal or seek direct review or rehearing has expired and as to which no timely appeal or petition for review or rehearing is pending.

"**General Unsecured Claim**" means any Unsecured Claim, arising prior to the Petition Date, as applicable to each Debtor, that is not a Professional Fee Claim, Other Administrative Expense Claim, Class 1, Class 2, Class 4 Claim, or Class 5 Equity Securities.

"**Graybar**" means Financial Servicing, LLC d/b/a Graybar.

"**Graybar Collateral**" means VoIP phone equipment with accessories owned by the Debtor.

"**Graybar Secured Claim**" means the first-priority purchase money security interest in the Graybar Collateral.

"**Holder**" means an entity, Person, or governmental unit that owns a Claim or Interest.

"**Hologic**" means Hologic Capital.

"**Hologic Collateral**" means one Hologic Mini C-Arm (Serial No. 30-1220-24M) owned by the Debtor.

"**Hologic Secured Claim**" means the first-priority purchase money security interest in the Hologic Collateral.

"**Impaired**" means any Class, or any Claim or Equity Security in a Class, which is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Insider**" has the meaning provided by section 101(31) of the Bankruptcy Code.

11

"**Interest**" means a right of the owners or Holders of any equity interests of the Debtor, including, but not limited to, the Equity Security Holders of the Debtor.

"**Lapsed Distribution**" means any distribution which has not been cleared or deducted from the Debtor's bank account within ninety (90) days of the date of the distribution.

"**Lien**" has the meaning provided by section 101(37) of the Bankruptcy Code.

"**OnePlace Capital**" means OnePlace Capital, a division of Bank Midwest.

"**OnePlace Capital Collateral**" means one (1) MultiGen2 RF Generator; two (2) Venom100MM Multigen2 Electrode; two (2) Venom150MM Multigen2 Electrode and Cables; one (1) Sierra Summit unit and accessories; one (1) GE C-Arm – OEC One ESP Main System; Universal Radiographic System Anthem 40KW; Stream 2 – Carbon Fiber Imaging Table owned by the Debtor.

"**OnePlace Capital Secured Claim**" means the first-priority purchase money security interest in the OnePlace Capital Collateral.

"**Other Administrative Expense Claim**" means an Administrative Claim that is not a Professional Fee Claim.

"**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

"**Petition Date**" means January 11, 2024, which is the date that the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

"**PlainsCapital**" means PlainsCapital Bank.

"**PlainsCapital Collateral**" means the Debtor's accounts, equipment, and proceeds as of the date of this Plan.

"**PlainsCapital Secured Claim**" means the first priority Secured Claim of PlainsCapital in the PlainsCapital Collateral securing PlainsCapital's line of credit and loan.

"**Plan**" means this Subchapter V Plan of Reorganization of the Debtor, dated March 21, 2024, together with all exhibits, schedules, and annexes hereto, all as may be modified, supplemented, or amended from time to time.

"**Plan Supplement**" means the supplemental annex to the Plan, if any, consisting of a compilation of documents and forms of documents, schedules and exhibits to be filed with the Plan or on or before the Plan Supplement Filing Date.

"**Plan Supplement Filing Date**" means the date that is fourteen (14) days prior to the deadline set by the Bankruptcy Court to submit ballots to vote on the Plan.

"**Priority Claim**" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included.

"**Professional Fee Claim**" means a Claim of a Professional Person for compensation for services rendered in this Case prior to the Confirmation Date under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code, for such Professional Person.

"**Professional**" or "**Professional Persons**" means Persons, including attorneys, accountants and financial advisors retained by the Debtor, or to be compensated under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

"**SBA**" means the United States Small Business Administration.

"**SBA Collateral**" means the Debtor's accounts, equipment, proceeds, and inventory as of the date of this Plan.

"**SBA Secured Claim**" means the third-priority Secured Claim of SBA in the SBA Collateral securing SBA's loan.

"**Schedules of Assets and Liabilities**" means the Schedules of Assets and Liabilities and Statements of Financial Affairs filed by the Debtor in the Case and any amendments thereto.

"**Secured Claims**" means the PlainsCapital Secured Claim, Besse Medical Secured Claim, SBA Secured Claim, OnePlace Secured Claim, Stryker Secured Claim, Hologic Secured Claim, and Graybar Secured Claim.

"**Secured Parties**" means PlainsCapital, Besse Medical, SBA, OnePlace, Stryker, Hologic, and Graybar.

"**Stryker**" means Flex Financial, a division of Stryker Sales, LLC.

"**Stryker Collateral**" means one (1) multigen2 RF generator; one (1) multigen2 splitter cable; one (1) monopolar return electrode cable 2; two (2) venom100mm multigen2 electrode; two (2) venom150mm multigen2 electrode owned by the Debtor.

"**Stryker Secured Claim**" means the first-priority purchase money security interest in the Stryker Collateral.

"**Subchapter V Trustee**" shall mean Thomas A Howley or any such person appointed by the U.S. Trustee to serve as subchapter V trustee in this case.

"**Unsecured Claim**" means a Claim not secured by a Lien on property of the Estate, not

13

entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Code, and excludes the Insider Subordinated Claims and Intercompany Claims.

"**U.S. Trustee**" means the United States Trustee.

"**Vendors**" means a Person that supplies to the Debtor goods or services that are necessary to the Debtor's operations.

## Section 1.05   Rules of Interpretation and Computation of Time

For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (iv) any reference to any entity as a holder of a Claim or Equity Security includes the entity's successors and assigns; (v) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (ix) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## Section 1.06   Exhibits

All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed. All references to "the Plan" shall be construed, where applicable, to include references to this document and all of its exhibits, appendices, schedules and annexes (and any amendments thereto made in accordance with the Bankruptcy Code). To the extent that the description of any exhibit, appendix, schedule or annex to the Plan is inconsistent with the actual terms or conditions of such exhibit, appendix, schedule or annex, the terms and conditions of the exhibit, appendix, schedule or annex, shall control.

## ARTICLE II.

## UNCLASSIFIED CLAIMS

## Section 2.01   Unclassified Claims

In accordance with sections 1123(a)(1) and 1129(a)(9) of the Bankruptcy Code, Administrative Claims are not classified and are excluded from the Classes designated in Article III of the Plan. Administrative Claims shall include Professional Fee Claims and Other Administrative Claims. The treatment accorded unclassified Claims is set forth in Article V of

the Plan. The holders of such Claims are not entitled to vote on the Plan.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

### Section 3.01   Classified Claims

Under section 1123(a)(1) of the Bankruptcy Code, Claims and Equity Securities are classified as follows:

a)   Class 1 consists of the PlainsCapital Secured Claim against the Debtor.

b)   Class 2 consists of the Besse Medical Secured Claim against the Debtor.

c)   Class 3 consists of the SBA Secured Claim against the Debtor.

d)   Class 4 consists of the OnePlace Capital Secured Claim against the Debtor.

e)   Class 5 consists of the Stryker Secured Claim against the Debtor.

f)   Class 6 consists of the Hologic Capital Secured Claim against the Debtor.

g)   Class 7 consists of the Graybar Secured Claim against the Debtor.

h)   Class 8 consists of the Allowed Priority Claims against the Debtor.

i)   Class 9 consists of the Allowed General Unsecured Claims against the Debtor.

j)   Class 10 consists of the Equity Securities.

## ARTICLE IV.

## VOTING AND IMPAIRMENT OF CLASSES

### Section 4.01   Impaired Classes of Claims Entitled to Vote

Under the Bankruptcy Code, only classes of claims and interests that are impaired under the plan are entitled to vote to accept or reject a plan. A class is impaired if the legal, equitable or contractual rights to which the holders of claims or interests are entitled are modified, other than by curing defaults and reinstating the debt. Pursuant to sections 1126(f) and (g) of the Bankruptcy Code, classes of claims and interests that are not impaired are conclusively presumed to have accepted the plan and are not entitled to vote on a plan, and classes of claims and interests whose holders will receive or retain no property under the plan are deemed to have rejected a plan and are not entitled to vote on a plan. Creditors who hold disputed or disallowed claims are not entitled to vote to accept or reject the plan.

Under the Bankruptcy Code, a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims properly voted in that class, voted to accept. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Except as otherwise ordered by the Bankruptcy Court, Class 1, Class 2, Class 3, Class 9, and Class 10 are Impaired, and the holders of Claims and Interests in those Classes are entitled

to vote to accept or reject the Plan, except to the extent that such Creditor or Interest Holder is an Insider.

## Section 4.02   Classes Deemed to Accept the Plan

Class 4, Class 5, Class 6, Class 7, and Class 8 are unimpaired and deemed to accept the Plan.

## Section 4.03   Voting and Confirmation Procedures

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan. Please carefully follow the instructions set forth in the ballot and vote and return your ballot(s), by first class mail, hand or overnight courier, to:

> Clerk of the Bankruptcy Court
> P. O. Box 61010
> Houston, TX 77208

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN 5:00 P.M. (CENTRAL TIME) ON May 3, 2024 (THE "*VOTING DEADLINE*").**

**ANY BALLOT WHICH IS EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR WHICH BOTH THE ACCEPTANCE AND REJECTION BOX IS CHECKED, WILL BE DEEMED TO BE AN ACCEPTANCE OF THE PLAN. ANY BALLOT THAT IS EITHER UNRETURNED BY THE VOTING DEADLINE OR IS RETURNED BUT NOT EXECUTED WILL BE CONSIDERED NULL AND VOID AND WILL NOT BE COUNTED.**

If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Plan or the procedures for voting on the Plan, please email counsel for the Debtor, Goldstein & McClintock LLLP, Attention: Matthew McClintock, Esq. & Amrit S. Kapai, Esq. at mattm@goldmclaw.com and amritk@goldmclaw.com.

## Section 4.04   Confirmation Hearing

A Confirmation Hearing is scheduled for May 21, 2024 at 9:30 a.m. (CST) before the Honorable Jeffrey P. Norman.   Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on all required parties on or before the objection deadline that has been set by the Bankruptcy Court.  Unless an objection to confirmation is timely served and filed, it may not be considered by the Bankruptcy Court.

## Section 4.05   Cram Down

The Debtor will request confirmation of the Plan under section 1191(b) of the Bankruptcy Code with respect to each Class that has not accepted the Plan. In the event of a cram down under

section 1191(b), the Debtor shall make payments to Creditors under the Plan, and, notwithstanding section 1194(b), the Subchapter V Trustee shall have no duty to make payments to Creditors under the Plan.

## Section 4.06    Fair and Equitable Test

To obtain confirmation of a plan over the objection of a class of claims or interests that rejects such plan, it must be demonstrated that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to each such non-accepting class. For a Court to find that a plan is "fair and equitable" and thus subject to confirmation by "cramdown" under the Bankruptcy Code, section 1191(c) of the Bankruptcy Code provides that the Debtor must demonstrate:

(1)  With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

(2)  As of the effective date of the plan—

(A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the Court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the Court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

(3)(A)  The debtor will be able to make all payments under the plan; or

(B)(i)  there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and

(ii)  the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

The Debtor believes that the Plan meets the fair and equitable test, as the Debtor will make distributions under the Plan in excess of its projected disposable income over a three-year period following Plan confirmation. Additionally, the Plan provides for appropriate remedies in the event of a default in Section 7.10.

The Debtor will also pay administrative claims upon the Effective Date and the Debtor will not pay principal or interest payments related to its secured debt in the distributions of the Projected Disposable Income. The Debtor's Projected Disposable Income is calculated in **Exhibit 2** to this Plan and is summarized in the table below:

|  | **Year 1** | **Year 2** | **Year 3** |
|---|---|---|---|
| Revenue | $5,021,250 | $5,265,000 | $5,289,375 |
| Cost of Goods | $3,177,000 | $3,252,000 | $3,259,500 |
| Selling, General, and Administrative expenses | $1,937,364 | $1,921,411 | $1,913,427 |
| **Net Income** | **($93,114)** | **$91,589** | **$116,448** |
| **Total Projected Disposable Income: $114,923** | | | |

## Section 4.07   Best Interest Test

With respect to each impaired class, confirmation of a plan requires that each holder of a claim or interest either: (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that holders of Impaired Claims and interests in each Impaired Class under the Plan would receive significantly less under a chapter 7 liquidation than under the Plan. This difference is represented in the liquidation analysis (the "*Liquidation Analysis*") attached hereto as **Exhibit 1**.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor was liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from such debtor's assets in a chapter 7 case under the Bankruptcy Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a chapter 7 trustee.

The amount of liquidation value available to unsecured Creditors would be reduced by, first, the Secured Claims to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of the bankruptcy case and priority claims.  Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as that of counsel and other professionals retained by the trustee, asset disposition expenses and all unpaid expenses incurred until the liquidation is completed.

The Debtor believes that the Plan meets the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code. The Debtor believes that the members of each Impaired Class will receive significantly greater value under the Plan than they would in a chapter 7 liquidation proceeding. The Debtor's Liquidation Analysis demonstrates that in the event of liquidation as described therein, holders of Unsecured Claims would not receive a distribution on their Claims. The Plan will provide a greater recovery than under chapter 7 due to: (i) the value the Debtor believes can be generated through the Debtor's future revenues which will fund distributions to Unsecured Creditors; and (ii) by avoiding the additional expenses associated with conversion to

a chapter 7 case and liquidation.

## ARTICLE V.

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

### Section 5.01    Allowed Professional Fee Claims

The Debtor will pay Allowed Professional Fee Claims in full and in Cash within ten (10) days of such Claims becoming Allowed Professional Fee Claims pursuant to Section 8.01 herein or as soon as reasonably practicable thereafter, provided, however, that payment of an Allowed Professional Fee Claim may be made at a later date by agreement between the Debtor and the Professional.    The Debtor estimates that the Allowed Professional Fee Claims will total approximately $120,000 (Debtor's counsel is currently holding approximately $53,000 in retainer funds; once the retainer is applied, the Debtor estimates $67,000 in unpaid professional fees).

### Section 5.02    Allowed Other Administrative Expense Claims

The Debtor shall pay Allowed Other Administrative Expense Claims, including the Allowed fees of the Subchapter V Trustee, in full and in Cash on the latest of: (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Allowed Other Administrative Expense Claims; (iii) the date upon which such Allowed Other Administrative Expense Claims become due in the ordinary course of business; and (iv) such other time as may be agreed in writing between the Debtor and the holder of the Allowed Other Administrative Expense Claim. Creditors seeking payment of Other Administrative Expense Claims have thirty (30) days following the occurrence of the Effective Date to file an application with the Bankruptcy Court requesting allowance and payment, or such Claims will be forever barred. The Debtor may settle and pay any Allowed Other Administrative Claim in its reasonable discretion without any further notice, and without any action, order, or approval of the Bankruptcy Court.  The Debtor estimates that the Allowed Other Administrative Expense Claims will total approximately $72,000, which will be paid in the ordinary course.

### Section 5.03    Class 1 Claim: PlainsCapital Secured Claim

Class 1 consists of the PlainsCapital Secured Claim.  The Debtor estimates that the Claim in this class totals $329,101.00, which is secured by a first-priority security interest in the PlainsCapital Collateral.

The Debtor will execute a promissory note (substantially in the form attached hereto as **Exhibit 3**)  in the principal amount of $329,101 or the amount allowed by the Bankruptcy Court or agreed to by the Debtor and PlainsCapital.  The note shall accrue interest at a rate of 8.5 percent (8.5%) per annum. The payments shall commence on July 1, 2024.  The note will be payable over 60 months. The Debtor shall make monthly installment payments of no less than $6,752.01 to the Holder of the Class 1 PlainsCapital Secured Claim. There will be no early payment penalty.

PlainsCapital shall retain its first-priority security interest in the PlainsCapital Collateral until full payment of the PlainsCapital Secured Claim as set forth in this Plan.

19

**Section 5.04   Class 2 Claims: Besse Medical Secured Claim**

Class 2 consists of the Besse Medical Secured Claim.  The Debtor estimates that the Claim in this class totals $107,325.39, which is secured by a second-priority security interest in the Besse Medical Collateral.

The Debtor will execute a promissory note (substantially in the form attached hereto as **Exhibit 4**) in the principal amount of $107,325.39, or the amount allowed by the Bankruptcy Court or agreed to by the Debtor and Besse Medical.  The note shall accrue interest at a rate of 8.5 percent (8.5%) per annum.  The payments shall commence on July 1, 2024.  The note will be payable over 60 months. The Debtor shall make monthly installment payments of no less than $2,201.94 to the Holder of the Class 2 Besse Medical Secured Claim.  There will be no early payment penalty.

Besse Medical shall retain its second-priority security interest in the Besse Medical Collateral until full payment of the Besse Medical Secured Claim as set forth in this Plan.

**Section 5.05   Class 3 Claims:  SBA Secured Claim**

Class 3 consists of the SBA Secured Claim.  The Debtor estimates that the Claim in this class totals $100,000,[2] which is secured by a third-priority security interest in the SBA Collateral.

The Debtor will execute a promissory note (substantially in the form attached hereto as **Exhibit 5**) in the principal amount of $100,000 or the amount allowed by the Bankruptcy Court or agreed to by the Debtor and SBA.  The note shall accrue interest at a rate of 3.5 percent (3.5%) per annum. The payments shall commence on July 1, 2024.  The note will be payable over 60 months. The Debtor shall make monthly installment payments of no less than $1,819.17 to the Holder of the Class 3 SBA Secured Claim.

SBA shall retain its third-priority security interest in the SBA Collateral until full payment of the SBA Secured Claim as set forth in this Plan.

The Debtor shall make distributions (i) twenty-four (24) months after the Effective Date of all Disposable Income received by the Debtor during the prior twenty-four (24) months, and (ii) thirty-six (36) months after the Effective Date of all Disposable Income received by the Debtor during the prior twelve (12) months: First, Pro Rata, to the holders of Allowed Priority Claims, up to the amount then remaining due to the claimholder, if any; second, Pro Rata to the holders of Allowed General Unsecured claims, up to the amount then remaining due to the claimholder, if any; third, Pro Rata, to the holders of Allowed Secured Claims in classes 1, 2, 3, and 4, up to the amount then remaining due to the claimholder, if any.

---

[2] The full amount of SBA's claim against the Debtor is approximately $208,848.47. However, only approximately $100,000 of SBA's claim is secured, based on the estimated value of the SBA Collateral.  The remainder of SBA's claim against the Debtor constitutes a deficiency claim, which, to the extent it is allowed, shall be included in the Class 9 Allowed General Unsecured Claims.

**Section 5.06    Class 4 Claims:  OnePlace Capital Secured Claim**

Class 4 consists of the OnePlace Capital Secured Claim.  The Debtor estimates that the Claim in this class totals $57,258.79, which is secured by a first-priority purchase money security interest in the OnePlace Capital Collateral.

The Debtor will make monthly payments to OnePlace Capital in the amount of $3,731.00, beginning on July 1, 2024, until the OnePlace Capital Secured Claim is paid in full.

OnePlace Capital shall retain its first-priority security interest in the OnePlace Collateral until full payment of the OnePlace Capital Secured Claim as set forth in this Plan. Upon full payment of the OnePlace Secured Claim, the OnePlace first-priority security interest in the OnePlace Collateral shall be deemed released

**Section 5.07    Class 5 Claims:  Stryker Secured Claim**

Class 5 consists of the Stryker Secured Claim.  The Debtor estimates that the Claim in this class totals $3,816.28, which is secured by a first-priority purchase money security interest in the Stryker Collateral.

The Debtor will make monthly payments to Stryker in the amount of $954, beginning on July 1, 2024, until the Stryker Secured Claim is paid in full.

Stryker shall retain its first-priority security interest in the Stryker Collateral until full payment of the Stryker Secured Claim as set forth in this Plan. Upon full payment of the Stryker Secured Claim, the Stryker first-priority security interest in the Stryker Collateral shall be deemed released

**Section 5.08    Class 6 Claims:  Hologic Secured Claim**

Class 6 consists of the Hologic Secured Claim.  The Debtor estimates that the Claim in this class totals $23,678.88, which is secured by a first-priority purchase money security interest in the Hologic Collateral.

The Debtor will make monthly payments to Hologic in the amount of $1,973, beginning on July 1, 2024, until the Hologic Secured Claim is paid in full.

Hologic shall retain its first-priority security interest in the Hologic Collateral until full payment of the Hologic Secured Claim as set forth in this Plan. Upon full payment of the Hologic Secured Claim, the Hologic first-priority security interest in the Hologic Collateral shall be deemed released

**Section 5.09    Class 7 Claims:  Graybar Secured Claim**

Class 7 consists of the Graybar Secured Claim.  The Debtor estimates that the Claim in this class totals $35,526.59, which is secured by a first-priority purchase money security interest in the Graybar Collateral.

The Debtor will make monthly payments to Graybar in the amount of $1,033, beginning on July 1, 2024, until the Graybar Secured Claim is paid in full.

Graybar shall retain its first-priority security interest in the Graybar Collateral until full payment of the Graybar Secured Claim as set forth in this Plan. Upon full payment of the Graybar Secured Claim, the Graybar first-priority security interest in the Graybar Collateral shall be deemed released.

## Section 5.10   Class 8 Claims:  Allowed Priority Claims

Class 8 Allowed Priority Claims against the Debtor shall be paid in full in from the Contributed Cash Proceeds from Operations, beginning on the later of: (i) the dates of the distributions of the Contributed Proceeds from Operations described in Section 5.11 below until such Allowed Priority Claims are paid in full; (ii) thirty (30) days after such Claims become Allowed Priority Claims; and (iii) such other time as may be agreed to in writing between the Debtor and the holders of the Allowed Priority Claims. The Debtor estimates that the Class 8 Allowed Priority Claims will total $8,995.13.

## Section 5.11   Class 9 Claims: Allowed General Unsecured Claims

Class 9 Allowed General Unsecured Claims against the Debtor will be paid their Pro Rata share of the portion of the Projected Disposable Income, $114,923, in Cash from the proceeds of the Debtor's post-confirmation operations (the "*Contributed Proceeds from Operations*") which remains after the Class 8 Allowed Priority Claims are satisfied.

The dates of distributions from the Contributed Proceeds from Operations shall be as follows: (i) $57,461.50 on or before twenty-four (24) months after the Effective Date; and (ii) $57,461.50 on or before thirty-six (36) months after the Effective Date (the "*Distribution Schedule*").

To the extent a Class 9 Claim is not an Allowed Claim on a distribution date, the Debtor will set aside such Holder's Pro Rata distribution. If the Claim becomes Allowed, such amount will be promptly distributed to such Holder. If the Claim is disallowed, the set aside amount will be added to the next Pro Rata distribution to Holders of Class 9 Claims.

The Debtor may, but is not required to, make the disbursements from Contributed Proceeds from Operations to Class 9 or any installment thereof sooner than required by the Distribution Schedule.

## Section 5.12   Class 10 Interests: Equity Security Interest

The Class 10 Interest consists of the equity security interest of Dr. Rush in the Debtor. The Equity Security Holder will retain its ownership of the membership interests in the Debtor. In the event that Class 9 Allowed General Unsecured Claims are paid in full under this Plan, any remaining funds from Contributed Proceeds from Operations shall be paid to the Holder of the Class 10 Interest.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS

### Section 6.01   Executory Contracts Assumed or Deemed Rejected

Unless otherwise provided herein, all Executory Contracts of the Debtor that: (i) are listed on **Exhibit 7** attached to this Plan; or (ii) have not (a) expired by their own terms and (b) otherwise been assumed prior to the Effective Date or pursuant to this Plan, will be deemed rejected under section 365 of the Bankruptcy Code on the Effective Date.

The Executory Contracts listed on **Exhibit 6** attached to this Plan shall be deemed assumed. The Debtor may file an additional or amended schedule of assumed or rejected Executory Contracts at any time prior to the Effective Date, as an amended **Exhibit 6** or **Exhibit 7**, respectively. The Debtor shall only be required to send notice of the filing of an amended schedule of assumed or rejected Executory Contracts to the counter-parties to such Executory Contracts that are added or omitted in the additional or amended schedule of assumed or rejected Executory Contracts. Parties in interest shall have ten (10) business days from the later of the date of filing of the schedules of assumed or rejected Executory Contracts or, in the case of counter parties to such contracts, the date of receipt of notice of the filing to object to a schedule of assumed or rejected contracts filed pursuant to this Section (the "*Assumption or Rejection Objection Deadline*"). Such notice will be deemed to be received seven (7) days after the Debtor places such notice to a Person in the mail for delivery by the U.S. Postal Service. If no objections are filed on or before the Assumption or Rejection Objection Deadline, the contracts on the timely filed schedule of assumed contracts or rejected contracts shall be deemed assumed or rejected, respectively.

The amount necessary to cure any assumed Executory Contract shall be the amount listed in **Exhibit 6**, unless the counter-party to an assumed Executory Contract files a timely objection to the scheduled cure amount on or before the Assumption or Rejection Objection Deadline and the Court enters an order allowing a different cure amount.

### Section 6.02   Bar Date for Rejection Damages

All proofs of claim with respect to Claims arising from the rejection of Executory Contracts pursuant to Section 6.01 of the Plan must, unless the Bankruptcy Court has ordered otherwise, be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. The Claims of any Person arising from the rejection of Executory Contracts or unexpired leases pursuant to Section 6.01 of the Plan that fails to timely file a proof of claim will be discharged under section 1141(d) of the Bankruptcy Code and forever barred from assertion against the Debtor or its assets.

# ARTICLE VII.

## MEANS OF IMPLEMENTATION OF THE PLAN

### Section 7.01    Retention of Equity

The Equity Security Holder will retain its Interest in the Debtor.

### Section 7.02    Vesting of Assets

On the Effective Date, the Assets of the Debtor's Estate will vest in the Debtor, free and clear of all Claims and Equitable Interests, except as provided in this Plan or the Confirmation Order.

### Section 7.03    Retention of Causes of Action

All Causes of Action shall survive confirmation of this Plan and the commencement of prosecution of Causes of Action shall not be barred or limited by any *res judicata* or estoppel, whether judicial, equitable or otherwise, based upon confirmation of the Plan. The Debtor's rights to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

### Section 7.04    Funding

The Plan will be funded by the disposable income from the Debtor's business operations.

### Section 7.05    Management

The Debtor's current managers shall continue to operate and manage the Debtor after the Effective Date. The Debtor may hire new officers, as necessary, after the Effective Date.

### Section 7.06    Objections to Claims

Each Claim shall be allowed or disallowed, as the case may be, in such amount as the Bankruptcy Court shall determine, whether prior to or following Confirmation, and whether pursuant to the Plan or otherwise, except that after the Effective Date, the Debtor may settle or compromise any objections and/or controversies regarding Claims without notice or further order of the Bankruptcy Court. The deadline to file all objections to Claims shall be no later than ninety (90) days after the Effective Date, which deadline may be extended by the Bankruptcy Court for good cause shown.

### Section 7.07    No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of distributions to holders of Claims, no payment or distribution shall be made to the holder of any Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under this Plan is due, such distribution to other Creditors shall not be affected by any delay in the resolution

24

and/or allowance of the Disputed Claim. Upon the allowance of any Disputed Claim, the holder shall be paid the amount that such holder would have received had its Claim been an Allowed Claim on the Effective Date.

**Section 7.08  Section 1146 Exemption**

Under, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument whatsoever in furtherance of or in connection with the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, mortgage tax, real estate transfer tax, mortgage recording tax, filing or recording fee, or other similar tax or governmental assessments.

**Section 7.09  Documentation Necessary to Release Liens**

Upon payment in full of each of the Secured Claims, each Secured Party who held such Secured Claim shall execute and deliver any documents necessary to release all Liens arising under any applicable security agreement or non-bankruptcy law (in recordable form if appropriate) in connection with its claims against the Debtor and such other documents as the Debtor may reasonably request.

**Section 7.10  Appropriate Remedies**

In the event of a material default of the Debtor under the terms of the Plan, that is not cured within 120 days of written notice of a default, the Debtor shall market and sell the assets of the Debtor. After the Secured Claims have been satisfied, the proceeds of sale will be paid to Creditors, first to debt incurred post-confirmation, then to pay Allowed Administrative Claims, then to pay Allowed Priority Claims, and then to pay Allowed General Unsecured claims.

**Section 7.11  Avoidance Actions**

The Debtor will investigate and, if appropriate in its business judgment, pursue Avoidance Actions, and any proceeds or recoveries of the Avoidance Actions will be used to fund the Contributed Proceeds from Operations, *provided, however*, that, in the interest of maintaining goodwill and continuing business relationships that are essential to the Debtor's operations, the Debtor will not pursue any Avoidance Actions against the Vendors.

The Debtor has analyzed payments made to the Vendors and other unsecured creditors within the 90 days prior to the Petition Date and included a net total of such potential Avoidance Actions (the "*Potential Avoidance Actions*") in the Liquidation Analysis. The Debtor made approximately $1,129,490.30 in payments to Vendors and other unsecured creditors; however, substantially all (if not all) of such payments appear to be in the ordinary course of the Debtor's business and/or subject to a new value defense. Therefore, the Debtor does not know the value of the Potential Avoidance Actions but believes that recovery from the Potential Avoidance Actions in a liquidation would not exceed $7,789.38 from non-insiders and $9,835.07 from insiders. The Liquidation Analysis therefore shows that, even if the Potential Avoidance Actions were pursued in a liquidation, the Plan still provides significantly better recoveries to Creditors and Interest Holders than that which they would receive in a liquidation.

# ARTICLE VIII.

## BAR DATES FOR ADMINISTRATIVE CLAIMS

### Section 8.01   Bar Date for Administrative Claims

Notwithstanding anything to the contrary or alternative provided by prior orders of the Bankruptcy Court regarding allowance or payment of Professional Fee Claims, all Persons requesting payment of any Administrative Claim, including but not limited to Professional Fee Claims, and Other Administrative Claims, must file applications for payment no later than thirty (30) days after the Effective Date. Any Administrative Claims for which applications are not timely filed in accordance herewith will be deemed discharged and barred from being asserted against the Debtor; provided that previously approved or Allowed applications for Administrative Claims do not need to be re-filed.

# ARTICLE IX.

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### Section 9.01   Conditions to Confirmation

The Plan shall not be confirmed unless and until the following conditions have occurred or have been waived in writing by the Debtor:

(a)   the Court approves this Plan and the disclosures contained herein and does not order, pursuant to section 1181(b) of the Bankruptcy Code, that section 1125 of the Bankruptcy Code applies to this Chapter 11 Case; and

(b)   the Court enters the Confirmation Order in form and substance acceptable to the Debtor.

### Section 9.02   Conditions to Effective Date

Unless waived in writing by the Debtor, the Effective Date shall occur only if:

(a)   the Confirmation Order has been entered and has not been vacated, reversed, stayed, enjoined, or restrained by order of a court of competent jurisdiction; and

(b)   the deadline for an appeal of the Confirmation Order has lapsed.

# ARTICLE X.

## EFFECTS OF CONFIRMATION

### Section 10.01  Debtor's Discharge

Pursuant to section 1192 of the Bankruptcy Code, effective upon the completion of payments in the Distribution Schedule, the Plan will discharge the Debtor from any and all Claims including any Claim, demands, Liens, and Interests that arose from any agreement of the Debtor

entered into, or obligations of the Debtor incurred before the Effective Date, or from any conduct of the Debtor prior to the Effective Date or that otherwise arose prior to the Effective Date, including, without limitation, all interest, if any, on such debts, whether such interest accrued before or after the Petition Dates of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such Claim was Filed or deemed Filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of Assets and Liabilities of the Debtor, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (iii) such the Holder of the Claim has voted on or accepted the Plan.

**Section 10.02 Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE CONFIRMATION DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST THE DEBTOR ARE, WITH RESPECT TO OR ON ACCOUNT OF ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT) THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER AGAINST THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND AGAINST OR IN THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE THE DEBTOR, OR ANY OF ITS PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN.

**Section 10.03  Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in this Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect through the imposition of the injunction set forth in Section 10.02 of the Plan.

**Section 10.04  Exculpation**

The Debtor will not have or incur any liability to, or be subject to any right of action by, any Person or entity, for any act or omission in connection with, relating to or arising out of, the Case or the pursuit of confirmation of the Plan, except to the extent arising out of fraud, willful misconduct, or gross negligence, and in all respects will be entitled to rely reasonably upon the advice of counsel with respect to its duties and responsibilities under the Plan.

**Section 10.05  Other Documents and Actions**

The Debtor is authorized to execute such documents and take such other action as is necessary to effectuate the transactions contemplated by the Plan.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

**Section 11.01  Headings for Convenience Only**

The headings in the Plan are for convenience of reference and will not limit or otherwise affect the meanings thereof.

**Section 11.02  Binding Effect of Plan**

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, and any Holder of a Claim or Interest treated herein or any entity named or referred to in the Plan and each of their respective representatives, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**Section 11.03  Modification of the Plan**

The Debtor may alter, amend or modify the Plan and related documents under section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Effective Date. After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtor may, so long as the treatment of Holders of Claims and Interests are not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan.

28

## Section 11.04 Final Order

Except as otherwise expressly provided in the Plan, the Debtor may waive any requirement in the Plan for a Final Order. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

## Section 11.05 Severability

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Equity Security, such provision shall be unenforceable as to all Holders of Claims or Interests to the specific Holder of the Claim or Interest, as the case may be, as to which the provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Debtor reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

## Section 11.06 Governing Law

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF TEXAS OR THE UNITED STATES OF AMERICA.

## Section 11.07 Notices

Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; (iii) electronic mail; or (iv) reputable overnight delivery service, freight prepaid, with copies to the following parties and others, if any, set forth in the Plan Supplement:

If to the Debtor:

Brent Callister
Galleria Pain Physicians, PLLC
24624 Interstate 45 N., Suite 125
Spring, TX 77386
bcallister@akpccorp.com

and

29

Matthew E. McClintock
Amrit S. Kapai
Goldstein & McClintock LLLP
111 W. Washington Street, Suite 1221
Chicago, Illinois 60602
Telephone: (312) 337-7700
E-mail: mattm@goldmclaw.com
          amritk@goldmclaw.com

If to the United States Trustee:

Ha Minh Nguyen
Office of the United States Trustee
515 Rusk St, Suite 3516
Houston, TX 77002
Telephone: 202-590-7962
Email: ha.nguyen@usdoj.gov

If to the Subchapter V Trustee:

Thomas A. Howley
Howley Law PLLC
711 Louisiana Street, Ste. 1850
Houston, TX 77002
Telephone: 713-333-9125
E-mail: tom@howley-law.com

## Section 11.08 Filing of Additional Documents

To the extent not filed with the Plan, on or before the Plan Supplement Filing Date, the Debtor will file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## Section 11.09 Lapsed Distributions

Lapsed Distributions will revert to the Estate and be distributed Pro Rata in accordance with the priorities of the Plan.

## Section 11.10 Undeliverable and Unclaimed Distributions

If any distribution to a holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder of an Allowed Claim will be made unless the Debtor is notified in writing of the holder's current address within thirty (30) days after the distribution date. Upon receipt of the notification, the Debtor will remit the distribution to the holder of the Allowed Claim without interest. All claims for undeliverable distributions or notice of address must be made within thirty (30) days after the distribution date or else the distribution will be deemed to be a Lapsed Distribution. Nothing in the Plan will require the Debtor to attempt to locate any

30

holder of an Allowed Claim. For any distribution which becomes a Lapsed Distribution, the Debtor shall be deemed to have made such distribution for the purpose of satisfying the amount required under this Plan of Contributed Proceeds from Operations or any other contribution requirement.

## Section 11.11  Defenses with Respect to Claims

Except as otherwise provided in the Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor, with respect to any Claim, including but not limited to all rights in respect of legal and equitable defenses to setoffs or recoupments against such Claims.

## Section 11.12  No Injunctive Relief

No Claim shall under any circumstances be entitled to specific performance or other injunctive, equitable or prospective relief.

## Section 11.13  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

## Section 11.14  Written Agreement

Any provision of this Plan that requires written agreement may be satisfied by email or other electronic communication indicating agreement of the relevant party.

## Section 11.15  Minimal Distribution

If any Pro Rata distribution to a holder of an Allowed Claim under this Plan would be in an amount less than $50.00, the Debtor is not required to make such distribution and for the purposes of satisfying the amount required under this Plan of Contributed Proceeds from Operations, the distributions shall be treated as having been made.

# ARTICLE XII.

# RETENTION OF JURISDICTION

**Section 12.01  Exclusive Jurisdiction of Bankruptcy Court**

The Bankruptcy Court will retain jurisdiction over this Case for the following purposes:

(a)  Resolution of any and all objections to Claims.

(b)  Unless otherwise determined by a court of competent jurisdiction, determination of all questions and disputes regarding all Causes of Action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Confirmation Date, between: (i) the Debtor and any other Person relating to any Claim or anyl term of the Plan or any transaction or act occurring under or pursuant to the Plan; or (ii) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Case.

(c)  The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

(d)  Modification of the Plan after the Confirmation Date pursuant to the Bankruptcy Code and the Bankruptcy Rules.

(e)  Allowance of all Claims and applications for payment of Administrative Claims and Professional Fee Claims, and Professional's expenses which may be paid by the Debtor pursuant to the provisions of the Plan and the Bankruptcy Code and resolution of all disputes pertaining thereto.

(f)  Enforcement of any order entered by the Bankruptcy Court.

(g)  Entry of a final order confirming substantial consummation of the Plan and closing the Case.

32

Dated: April 3, 2024      Respectfully submitted,

By: /s/ Matthew E. McClintock

Matthew E. McClintock, Esq.
Ainsley G. Moloney, Esq.
Amrit S. Kapai, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310
mattm@goldmclaw.com
ainsleym@goldmclaw.com
amritk@goldmclaw.com

*Counsel to the Debtor and Debtor-In-Possession*

## PLAN EXHIBITS

| | |
|---|---|
| **Exhibit 1** | **Liquidation Analysis** |
| **Exhibit 2** | **Disposable Income Projections** |
| **Exhibit 3** | **PlainsCapital Promissory Note** |
| **Exhibit 4** | **Besse Medical Promissory Note** |
| **Exhibit 5** | **SBA Promissory Note** |
| **Exhibit 6** | **Schedule of Assumed Contracts** |
| **Exhibit 7** | **Schedule of Rejected Contracts** |